IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

BART WAYNE WOODARD                                                  PLAINTIFF

v.                              Civil No. 6:17-CV-06113

DR. NYNETT VOWELL, *et. al.*                                      DEFENDANTS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court is Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order. (ECF No. 6).

**I. BACKGROUND**

Plaintiff filed his Complaint and Motion for Preliminary Injunction and Temporary Restraining Order on October 31, 2017. (ECF Nos. 1, 6). Plaintiff's Motion makes four allegations concerning his medical care at the Arkansas Department of Correction (ADC) Ouachita River Unit.[1]

First, Plaintiff alleges, that his personal "orthopedic shoes with a nominal build up on the left shoe" were taken from him, by unnamed ADC correctional officer(s), upon intake in the Unit on October 1, 2015. (ECF No. 6 at 2). Plaintiff alleges he suffered an injury to his left hip on August 31, 2009, which required screws and pins for repair, and left him with a "small but notable limp." (*Id.*). Plaintiff alleges the shoes compensated for the limp, permitting him to maintain the same

---

[1] Plaintiff does not identify the specific ADC Unit in his Motion, but does so in his Amended Complaint. (ECF No. 8).

1

gait for over six years. (*Id.*). Plaintiff alleges he told several ADC correctional officers that his personal orthopedic shoes were necessary to prevent further damage to his hip, but his orthopedic shoes were taken despite this information, and he received blue canvas shoes as a replacement. (ECF No. 6 at 2-3). Plaintiff alleges it took three and a half months to receive replacement orthopedic shoes. (ECF No. 6 at 3, 17).

Second, Plaintiff alleges he was denied any type of ambulation device after his personal orthopedic shoes were taken. (ECF No. 6 at 3-4). Plaintiff claims "[a] script for the posses[s]ion of a cane was written within the first 14 days & given to the Plaintiff, however the actual possession of a cane did not occur until January 2016." (*Id.*). Plaintiff states he was denied an ambulation device for the same amount of time that he was denied orthopedic shoes. (*Id.*). Plaintiff alleges that the denial of both the orthopedic shoes and cane, in combination with "forced long distance ambulation," caused a "severe amount of damage" to Plaintiff's "pelvic regions" (ECF No. 6 at 6) and that he is now suffering both acute and chronic pain and "popping" in his pelvis (ECF No. 6 at 7-8).

Third, Plaintiff alleges that he has been denied any "meaningful medication regime" for his pelvic pain. (ECF No. 6 at 8). Plaintiff alleges Correct Care Solutions (CCS)[2] staff and providers "have constantly stated that Plaintiff has no pain that requires any additional or stronger pain medications." (*Id.*) Plaintiff further alleges CCS staff and providers "have refused & continue to refuse sending Plaintiff out of the prison for either a C.T. scan or MRI scan in order to provide any concrete objective data that this Plaintiff has a actual pain. . . ." *(Id.)*. Plaintiff claims he was sent to Baptist Health Hospital in December 2016 for transfusions. (ECF No. 6 at 8-9). Plaintiff alleges that while at Baptist Health, he received an "appropriate medication regime" for pain and the

---

[2] Correct Care Solutions is a private correctional healthcare provider under contract with the ADC to provide inmate healthcare.

2

"rel[ie]f was notable." (ECF No. 6 at 9). Plaintiff states he also received a CT scan to address the pain in his pelvic region, and the scan confirmed his complaints of pain. (ECF No. 6 at 9-10). Plaintiff alleges Defendant Hart refused to look at the CT scan report, and refused to permit Plaintiff to take the report to Defendant Vowell. (ECF No. 6 at 10). Plaintiff alleges that:

> [d]ue to the put offs, the misrepresentation of fact the outright lies regarding increases in strength of medications, or number of times per day the plaintiff would receive the medications, changing the actual type & or brand of medications nothing meaningful & effective has been implemented and the Plaintiff has suffered greatly due to this constant deliberate indifference.

(ECF No. 6 at 13). Plaintiff alleges he received medication that was "slightly effective" in the first half of 2016, but this medication was discontinued when he was admitted to the University of Arkansas for the Medical Sciences during the last half of 2016. (ECF No. 6 at 14-15). Plaintiff alleges he received a fifteen-day trial medication regime that was effective in the first half of 2017, but when the fifteen day trial expired, he no longer received the extra medication despite his requests and grievances. (ECF No. 6 at 15). Plaintiff alleges he continues to "plead for meaningful changes to the current medication regime." (*Id.*).

Fourth, Plaintiff alleges CCS providers refuse to set any appointments with any orthopedic doctors "who could offer some insight it will recommend for medication regime & why the regime is needed, & insight as to why or why not surgery is needed." (ECF No. 6 at 15).

Plaintiff requests[3] the Court order that Plaintiff be temporarily placed back on "the medication regimen that was ADC approved while Plaintiff was in the Washington County Jail," which included Elavil, Neurontin, Meloxicam,[4] and "Tyl 500 mg." (ECF No. 6 at 20). Plaintiff lists a number of medications which, "combined together or perhaps individually are very effective

---

[3] Plaintiff's Motions includes a series of what appear to be proposed Orders. (ECF No. 6 at 19-24). The Court will construe these proposed Orders as his requested relief in the instant Motion.
[4] Plaintiff listed this medication as Mexolicam, which the Court interprets as Meloxicam.

3

as pain control medication." (ECF No. 6 at 21). Plaintiff requests that the Court order an MRI or CT scan of his pelvis, an appointment with a chiropractor, spinal x-rays, a spinal brace, physical therapy, and an appointment with an "independent, unbiased orthopedic specialist" chosen by the Court. (ECF No. 6 at 20, 21, 23). Plaintiff further requests that, in the event CCS employees fail to follow the directives of the court-appointed orthopedic specialist, the Court will then issue an order creating a medication regimen based on the advice of an "impartial independent medical pain management Doctor." (ECF No. 6 at 20). Finally, Plaintiff requests that the Court order that his rack and housing unit not be changed in retaliation for filing this suit. (ECF No. 6 at 21-22).[5]

## II. LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedures governs the issuance of temporary restraining orders and preliminary injunctions. In deciding a motion for a temporary restraining order or a preliminary injunction, the courts are instructed to consider the following factors: (1) the probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of an injunction is in the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc); s*ee also Minnesota Mining and Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1307 (8th Cir. 1997); *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 485-86 (8th Cir. 1993). While no single factor in itself is dispositive, the Eighth Circuit Court of Appeals has held "the two most critical factors for a district court to consider in determining whether to grant a preliminary injunction are (1) the

---

[5] Plaintiff's request concerning housing assignments is not part of his Motion regarding medical care and will therefore not be analyzed as such. Further, the Court does not have the authority to direct the ADC as to the specific housing of any inmate. Plaintiff should continue to pursue administrative relief within the ADC in this regard for any concerns he may have.

4

probability that plaintiff will succeed on the merits, and (2) whether the plaintiff will suffer irreparable harm if an injunction is not granted." *Chicago Stadium Corp. v. Scallen,* 530 F.2d 204, 206 (8th Cir. 1976). The burden of proving a preliminary injunction is warranted rests on the movant. *Goff v. Harper,* 60 F.3d 518, 520 (8th Cir. 1995). Further, the Eighth Circuit has instructed that "in the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Id.* (internal quotations omitted).

### III. ANALYSIS

As a preliminary matter, Plaintiff has alleged that the denial of orthopedic shoes and a cane has been remedied, as both were provided to him in January 2016. He has not alleged that he has been denied orthopedic shoes or a cane since he received them in 2016. His claims for injunctive relief regarding orthopedic shoes and a cane or other ambulatory device are therefore moot at this time. *See Beaulieu v. Ludeman*, 690 F.3d 1017, 1024 (8th Cir. 2012) ("In general, a pending claim for injunctive relief becomes moot when the challenged conduct ceases and there is no reasonable expectation that the wrong will be repeated."). This leaves Plaintiff's claims requesting injunctive relief concerning his pain medication and access to medical specialists for analysis.

#### A. Probability of Success on the Merits

Plaintiff does not allege that he has been denied pain medication or medical care for his pelvic pain or spine. Instead, he alleges that his pain medication "regime" has, with the exception the first half of 2016, a fifteen day trial period in 2017, and time spent at Baptist Health Hospital, not been adequate. He alleges he has been told that he does not require additional or stronger pain medication. Plaintiff also alleges he should be provided with access to independent and unbiased specialists and given an MRI or CT scan, as well as other medical tests. Thus, Plaintiff clearly disagrees with the adequacy and effectiveness of the pain medication and medical care provided

to him. However, mere disagreement with medical treatment fails to state a claim of deliberate indifference. *See Meuir v. Greene County Jail Employees,* 487 F.3d 1115, 1118-19 (8th Cir. 2007) (an inmate has no constitutional right to a particular course of treatment, and his mere disagreement with the medical treatment he receives is not a basis for section 1983 liability); *Pietrafeso v. Lawrence County, S.D.,* 452 F.3d 978, 983 (8th Cir. 2006) (showing deliberate indifference is greater than even gross negligence and requires more than mere disagreement with treatment decisions). Therefore, at least at this juncture, the Court finds it is improbable that Plaintiff's denial of medical care claims will be successful on the merits.

### B. Irreparable Harm

A preliminary injunction is meant to "preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). Here, Plaintiff alleges the harm to his pelvis occurred because he was denied orthopedic shoes and a cane or other ambulatory device for three and a half months. Based on his own allegations, these were provided to him in January 2016. Plaintiff does not allege he has been denied orthopedic shoes or an ambulatory device since 2016. Thus, it does not appear that any further deterioration of his pelvis will occur due to a lack of orthopedic shoes or a cane. Nor, as was discussed above, has Plaintiff been denied pain medication or medical care. Thus, it does not appear that Plaintiff's pelvis or spine will irretrievably deteriorate if he does not receive his preferred pain medication or access to preferred specialists while this case proceeds on the merits. *See Williams v. Correctional Medical Services*, 166 Fed App'x 882, 882 (8th Cir. 2006) (Plaintiff's claims concerning Hepatitis C testing and treatment showed neither threat of irreparable harm or likelihood of success on the merits to warrant a preliminary injunction*); see also Quint v. Lantz*, 248 Fed App'x 218, 219 (2d Cir. 2017) (alleged denial of medical care,

including preferred pain medication, for degenerative, rather than acute, medical condition did not suffice to show irreparable harm).

### C. Balance of Harm and Injury

In balancing the harm and the injury to the Defendants if the injunction is granted, the balance favors the Defendants. Granting the injunction would amount to this Court interfering with the Medical Defendants' exercise of their medical judgment. As noted above, the Court should grant injunctive relief only "with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff,* 60 F.3d at 520.

### D. Public Interest

In assessing whether the issuance of an injunction would be in the public interest, it must be remembered that the "federal courts do not sit to supervise state prisons, the administration of which is of acute interest to the States." *Meachum v. Fano*, 427 U.S. 215, 229 (1976). It has been concluded that "protecting constitutional rights of inmates by maintaining the status quo for a handful of inmates outweighs the public interest 'in minimizing court interference in the orderly and secure running of the prison system.'" *Bear v. Kautzky*, 305 F.3rd 802, 805 (8th Cir. 2002) (affirmance—quoting lower court). In this instance, the relief Plaintiff seeks would not maintain the status quo; instead, the relief he seeks would require dictating to the prison what type of medical care must be provided to the Plaintiff. Public interest does not favor interference with the operations of the prison.

## IV. CONCLUSION

Accordingly, I recommend Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (ECF No. 6) be **DENIED**.

The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. Plaintiff is reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 26th day of April 2018.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE